IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BIGCOMMERCE, INC.,** *Plaintiff* § § § § | |
| v. § | Case No. 1:24-CV-00121-SH |
| § § | |
| **S&O INC., S&O LLC, SALES AND ORDERS LLC, and OMNI ONE AI LLC,** *Defendants* § § § § § | |

# ORDER

Now before the Court are Defendant Omni One AI LLC's Motion to Dismiss or, in the Alternative, Motion for More Definite Statement, filed June 28, 2024 (Dkt. 20); Plaintiff's Response, filed July 9, 2024 (Dkt. 25); Defendant Omni One AI LLC's Reply, filed July 16, 2024 (Dkt. 27); and Plaintiff's Jurisdictional Brief in Response to the Court's September 9, 2024 Order, filed September 20, 2024 (Dkt. 33).[1]

## I. Background

Plaintiff BigCommerce, Inc. brings this breach of contract action against Defendants Omni One AI LLC and S&O Inc., S&O LLC, Sales and Orders LLC ("S&O Entities").

### A. Facts

BigCommerce is a software company headquarted in Austin, Texas that offers an ecommerce platform its customers use to operate online stores. Complaint, Dkt. 1 ¶ 16. BigCommerce partners with software developers to integrate their technologies onto Plainitff's ecommerce platform. *Id.* ¶ 17. "This, in turn, leads to corresponding revenue to these software developers through Plaintiff's customers paying for and using these software technologies." *Id.* ¶ 18.

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

BigCommerce entered into a Technolgy Partner Program Agreement and Addendum ("Agreement") with Defendant S&O Inc. on November 12, 2017, in which S&O Inc. agreed to develop a software application ("App") to be used on BigCommerce's ecommerce platform. *Id.* ¶ 23. BigCommerce attached the Agreement to its Complaint, and Gregg Hanan, President of S&O Inc., signed the Agreement on behalf of S&O Inc. Dkt. 1-1 at 1. The Agreement defines the parties as "S&O Inc." and "BigCommerce." *Id.*

The Agreement required S&O Inc. develop and launch the App by October 15, 2017, which would "allow BigCommerce merchants free access to list their store's products to Google Shopping via Google Merchant Center" and to purchase certain software technologies from BigCommerce and S&O. *Id.* at 2 § 4. The Agreement also states that S&O Inc. would make "Revenue Share" monthly payments to BigCommerce "equal to 20% of [S&O Inc.] App Commissionable Revenues," *id.* § 6.2, and that BigCommerce agreed to make quarterly revenue share payments to S&O Inc. "equal to 10%" of commissionable revnues. *Id.* at 3 § 7.2.

Although BigCommerce executed the Agreement with only S&O Inc., it alleges that the S&O Entities "collectively operate 'Sales & Orders', a software company which offers data feed and shopping advertisement managament software solutions." Dkt. 1 ¶ 21. BigCommerce alleges that "Defendants—or, at least, individuals with controlling interests in Defendants—also operate 'OmniOne', which was formed in June of 2023 to offer data feed management software substantially similar, if not identical, to the software offered by Sales and Orders." *Id.* ¶ 22.

BigCommerce alleges that Defendants fulfilled their obligations under the Agreement for the first several years, but "beginning in and around January of 2022, Sales and Orders failed to fully pay the requried revenue share payments payable to Plaintiff despite such amounts becoming due

on a monthly basis." *Id.* ¶ 29. BigCommerce alleges that Defendants owe it more than $855,000 in past due revenue share payments and late fees. *Id.* ¶ 60.

## B. Litigation

BigCommerce asserts claims against all Defendants for breach of contract, suit on sworn account, and quantum meruit under Texas law. It invokes this Court's federal question jurisdiction under 28 U.S.C. § 1332, alleging that complete diversity exists between the parties and the amount in controversy exceeds $75,000. It seeks monetary damages, attorneys' fees and costs, and interest.

Omni argues that all of BigCommerce's claims against it should be dismissed under Federal Rule of Civil Procedure 12(b)(6). BigCommerce contends that it has alleged sufficient facts to support its claims.

Because BigCommerce did not specifically allege in its Complaint the citizenship of every member of the Defendant limited liability companies, this Magistrate Judge ordered BigCommerce to submit a brief addressing the citizenship of their members. Dkt. 31. BigCommerce filed its jurisdictional brief on September 20, 2024. Dkt. 33.

## II. Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction under 28 U.S.C. § 1332(a) "when the amount in controversy is satisfied and there is complete diversity of citizenship between the parties." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). To properly allege diversity jurisdiction under § 1332, the parties must allege "complete diversity." *SXSW, LLC v. Fed. Ins.,* 83 F.4th 405, 407 (5th Cir. 2023). That means "all persons on one side of the controversy must be citizens of different states than all persons on the other side." *Id.*

BigCommerce is a Texas corporation with its principal place of business in Austin. Dkt. 1 ¶ 2. S&O Inc. is a Delaware corporation with its principal place of business in Grand Rapids, Michigan. *Id.* ¶ 3. Defendants S&O LLC, Sales and Orders, LLC, and Omni One AI LLC are limited liability

companies. For diversity purposes, LLCs are citizens of any state of which their members are citizens. *Id.* at 407-08.

To establish diversity jurisdiction, BigCommerce must "specifically allege the citizenship of every member of every LLC," *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017), with "clear, distinct, and precise affirmative jurisdictional allegations," *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).

BigCommerce alleges that: (1) all S&O LLC members are New York citizens; (2) all Sales and Orders LLC are New York citizens; and (3) all Omni LLC members are New York citizens. Dkt. 33 at 2-5. BigCommerce thus has sufficiently alleged that the Defendant limited liability companies' members are diverse from BigCommerce. Because there is complete diversity between BigCommerce and Defendants, diversity jurisdiction exists under 28 U.S.C. § 1332(a). *SXSW*, 83 F.4th at 407.

### III. Omni's Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "[B]ecause the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

**A. Breach of Contract Claim**

BigCommerce alleges that all "Defendants breached their obligations under the Agreement by failing to make the required revenue share payments to Plaintiff." *Id.* ¶ 55. Omni argues that BigCommerce fails to state a plausible breach of contract claim against it because "the only parties to the contract are Plaintiff and S&O, Inc." and "[b]y Plaintiff's own allegations Omni was not formed until June 14, 2023." Dkt. 20 at 3. BigCommerce does not dispute that Omni was not formed until June 2023 and that only S&O Inc. executed the Agreement on November 12, 2017. Yet BigCommerce argues that Omni is still liable for its obligations under the Agreement "based on both an assignment theiory, and an 'alter ego' theory of liability." Dkt. 25 at 10.

1. **Required Elements under Texas Law**

In a diversity case involving interpretation of a contract, courts apply the substantive law of the forum state. *Mission Pharm. Co. v. Molecular Biologicals, Inc.*, 112 F.4th 337, 340 (5th Cir. 2024). Texas substantive law governs this dispute.

Under Texas law, to show the existence of a valid contract, the plaintiff must show: "(1) an offer was made; (2) the other party accepted; (3) the parties had a meeting of the minds; (4) each party consented; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022) (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018)). Breach of contract "requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "Contested fact issues . . . are for the jury to resolve, and the burden of proof is on the party seeking a remedy." *Pathfinder Oil*, 574 S.W.3d at 890.

In Texas, "a party generally must be a party to a contract before she can be held liable for a breach of that contract." *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 739 (N.D. Tex. 2014); *see also First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) ("As a general rule, the benefits and burdens of a contract belong solely to the contracting parties."). But traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) ("Texas law has long recognized that nonparties may be bound to a contract under various legal principles.").

## 2. Assignment

The general rule under Texas law is that all contracts are freely assignable unless the contract expressly provides otherwise. *Dubier v. Triangle Cap. Props., LLC*, --- F. Supp. 3d ----, No. 1:21-CV-415, 2024 WL 2852962, at *11 (E.D. Tex. June 5, 2024). But a party cannot be held liable under another party's contract without an express or implied assumption of the contract's obligations. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 286 (Tex. 2021). "The party seeking to hold a non-party liable for breach of contract has the burden to prove that the non-party obligated itself under the contract." *Mayers v. Addison Brown, LLC*, No. 3:19-CV-3043-S, 2020 WL 7646973, at *2 (N.D. Tex. Dec. 22, 2020).

To expressly assume a contractual obligation, "there must be promissory words or words of assumption on behalf of the assignee." *Wagner*, 627 S.W.3d at 286. Implied covenants can be found (1) when the term was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, or (2) on equitable grounds. *NextEra Retail of Tex., LP v. Invs. Warranty of Am., Inc.*, 418 S.W.3d 222, 227-28 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "Implied covenants are not favored, and courts will not lightly imply additional covenants enlarging the terms of a contract." *Jones v. Cooper*, 938 S.W.3d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

BigCommerce argues that there was "an implicit assignment by Sales and Order to Omni One of the obligations under the Agreement." Dkt. 25 at 10. BigCommerce contends that it has shown this "by a more-than-sufficient offering of facts showing a transition of operations, or rebranding, from Sales and Orders to Omni One," including:

> (1) Omni One sharing the same business address and employees, suggesting a continuation or commingling of operations; (2) Omni One touting that its services are "powered by Sales & Orders", further suggesting a commingling of operations; (3) Omni One, on the day it was "formed" touting that 15,000 brands utilize it and that it has nine figures in managed advertisement

7

> spending and products being synced monthly, all of which are likely numbers taken from Sales and Orders and suggesting a transition of operations; (4) when users input their information to sign up on Omni One's website, they receive a welcome email from "info@salesandorders.com" welcoming them to "Sales & Orders" and making no mention of Omni One in that email; and (5) Omni One specifically advertising that it is compatible and integrates with Plaintiff's software.

*Id.* at 10-11. BigCommerce argues: "Given that Sales and Orders never cancelled the Agreement and continued to service Plaintiff's customers under the 'Omni One' brand, an implicit assignment occurred." *Id.* at 11.

While contracts generally are assignable, "parties may agree to include anti-assignment clauses or limitations on assignment in their contracts, and such clauses are generally 'enforceable unless rendered ineffective by a statute.'" *Dubier*, 2024 WL 2852962, at *11 (quoting *In re Hughes*, 513 S.W.3d 28, 32 (Tex. App.—San Antonio 2016, pet. denied)). The Agreement between BigCommerce and S&O Inc. contains the following anti-assignment provision:

> 10.6. **Assignment**. Neither party will have any right or ability to assign, transfer, or sublicense this Agreement, or any obligations or benefit under this Agreement, without the prior written consent of the other party (and any contrary attempt will be null and void). Notwithstanding the foregoing, either party may assign this Agreement in its entirety, without consent of the other party but with prompt written notice thereof, to its Affiliate or in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets not involving a direct competitor of the other party. In addition, if a competitor of BigCommerce acquires a controlling interest in Partner, Partner shall promptly, and in any case within five (5) business days, notify BigCommerce in writing of any such acquisition, and BigCommerce may thereafter at its sole and exclusive discretion: (a) terminate this Agreement; and/or (b) remove Partner's access to all BC Properties, including without limitation, the Program.

Dkt. 1-1 at 12.

BigCommerce states in its Complaint that "Defendant did not notify Plaintiff, or obtain Plaintiff's consent, to transfer or assign their obligations under the Agreement to OmniOne or any other party." Dkt. 1 ¶ 39. Thus, under the clear terms of the anti-assignment provision,

8

BigCommerce admits that there was no transfer or assignment of obligations under the Agreement. *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 556 (Tex. 1986) ("[B]y the terms of the [anti-assignment provision] the letter of commitment was not assignable without Republic's consent. Thus, any attempted assignment, whether absolute or collateral, would be of no force and effect."); *Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App.—San Antonio 1989, writ denied) (holding attempted assignment invalid when agreement contained an express restriction that seller could not assign or transfer any rights without prior written consent of purchaser and it was undisputed that purchaser had not consented).

In its Response, BigCommerce argues that this allegation "does not preclude potential recovery by Plaintiff, as the non-assigning party can waive a non-assignment clause." Dkt. 25 at 12. But BigCommerce's allegation that no notice was provided, which this Court must take as true, precludes any possibility of a waiver. BigCommerce also relies on *Curtis v. Cerner Corp.*, 621 B.R. 141 (S.D. Tex. 2020), to argue that dismissal of its breach of contract claim is inappropriate because there is a "factual disagreement" between the parties as to whether S&O Inc. assigned its obligations to Omni. BigCommerce cannot rely on Curtis because the agreement in that case did not have an anti-assignment provision and the plaintiff alleged sufficient facts to show plausible assignment. *Id.* at 161.

Under Texas law, "a court should not, under the guise of contract construction, imply terms in opposition to the express language that the parties themselves have written into the contracts." *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989) (citation omitted). BigCommerce and S&O Inc. agreed to the anti-assignment provision. BigCommerce's argument fails because the express language of the contract negates any implied assumption of liability. *See Calvasina v. Wal-Mart Real Est. Bus. Tr.*, No. SA-09-CA-1024-XR, 2011 WL 2551396, at *5 (W.D. Tex. June 27,

2011) ("Plaintiff's argument attempting to show an implied assumption of liability fails to a raise a question of material fact to the contrary because the express language of the contract negates any implied assumption of liability."); *54 Broad., Inc. v. Lin Television of Tex., L.P.*, No. A-08-CA-030-SS, 2008 WL 7836303, at *5 (W.D. Tex. Dec. 3, 2008) ("[B]ecause the Option Agreement contains a clear restriction on assignability in the language of the contract, the presumption of free assignability does not apply."); *Trimble v. OneWest Bank*, No. 14-16-00641-CV, 2017 WL 3666519, at *3 (Tex. App.—Houston [14th Dist.] Aug. 24, 2017, pet. denied) (rejecting assignment argument and enforcing anti-assignment clause); *Hughes*, 513 S.W.3d at 35 ("The plain language of the contracts reveals that the parties intended to restrict assignments. 'Absent a violation of public policy, we will not approve the voiding of unambiguous, bargained-for contract terms.'"); *Cloughly*, 773 S.W.2d at 655 ("[W]here a contract expressly states that a right to payment arising under it is non-assignable, full force and effect must be given to this provision.").

### 3. Alter Ego

Alter ego, or piercing the corporate veil, is a remedy to enforce an underlying cause of action and is not a separate cause of action. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 442 (5th Cir. 2014); *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.— Houston [14th Dist.] 2014, no pet.). Under the alter ego doctrine, "a corporation may be bound by an agreement entered into by its subsidiary regardless of the agreement's structure or the subsidiary's attempts to bind itself alone to its terms, when their conduct demonstrates a virtual abandonment of separateness." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 358-59 (5th Cir. 2003). The corporate veil may be pierced to hold an alter ego liable only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue, and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Id.* at 359. The corporation and the subsidiary's conduct must demonstrate "a virtual abandonment of separateness." *Id.*

BigCommerce argues for the first time in its Response that Omni is liable for S&O Inc.'s obligations under the Agreement under the alter ego theory of liability. A party may not raise new theories of liability in a response brief. *See Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016) ("The complaint may not be amended by the briefs in opposition to a motion to dismiss."); *U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co.*, 491 F. Supp. 3d 220, 232 (N.D. Tex. 2020) ("It is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time."). Because BigCommerce does not allege an alter ego theory of liability in its Complaint, this theory is not properly before the Court. *See Bostic v. Daily Dot, LLC*, No. 1:22-CV-158-RP, 2023 WL 2317789, at *4 (W.D. Tex. Mar. 1, 2023) (stating that plaintiff cannot raise alter ego claim for the first time in his response); *Kinder Morgan*, 491 F. Supp. 3d at 232 (refusing to consider alter ego theory of recovery raised for the first time in response to motion to dismiss); *Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*, No. SA-14-CA-918-OLG, 2015 WL 12866214, at *7 (W.D. Tex. Apr. 10, 2015) (dismissing breach of contract claim when plaintiff did not allege alter ego in his complaint), *R. & R. adopted*, 2015 WL 12867469 (W.D. Tex. May 7, 2015).

Even if BigCommerce had alleged an alter ego theory of liability in its Complaint, its breach of contract claim would fail because it alleges no facts showing that *Omni* breached the Agreement. BigCommerce alleges that Defendants breached the Agreement "beginning in or around January of 2022" by failing to pay the required revenue share payments. Dkt. 1 ¶ 5. BigCommerce also alleges, and Omni does not dispute, that Omni was not created until "June of 2023," *Id.* ¶ 22. so Omni could not have breached the Agreement between January 2022 and May 2023. BigCommerce does not allege "(i) whether its agreement with S&O, Inc. was still active after June of 2023 when Omni came into existence; (ii) whether the S&O, Inc. App was still

active on the BC Marketplace after June of 2023; or (iii) whether Omni benefitted from the agreement by having an App on the BC Marketplace after June of 2023." Dkt. 27 at 8. Without such allegations, BigCommerce does not allege a plausible breach of contract claim against Omni.

## B. Suit on Sworn Account

BigCommerce also asserts a suit on sworn account claim against Omni. BigCommerce alleges in its Complaint:

(1) "By virtue of the Agreement, the Parties agreed in writing that Defendants would pay a 20% revenue share to Plaintiff in exchange for Plaintiff's services";

(2) "Beginning in January of 2022, Defendants failed to pay the required revenue share payments that served as consideration for Plaintiff's services, and that failure to pay is continuing in nature";

(3) "To date, the balance of the account is in excess of $855,000.00, exclusive of interest, attorney's fees, and costs, which is unpaid"; and

(4) "Plaintiff has sustained harm as a result of Defendants' failure to pay a sworn and open account."

Dkt. 1 ¶¶ 64-67.

Under Texas law, the elements for a common law action on a sworn account are:

> (1) there was a sale and delivery of the merchandise or performance of the services; (2) the amount of the account is just, that is, that the prices were charged in accordance with an agreement, or in the absence of an agreement, they are usual, customary, and reasonable prices for that merchandise or services; and (3) the amount is unpaid.

*Coim USA Inc. v. Sjobrand Inc.*, 663 F. Supp. 3d 684, 689 (N.D. Tex. 2023). A suit on a sworn account "presupposes a contract or a series of contracts that is performed by one party as plaintiff who sues the other party, as defendant, for performance of his obligations" and "does not apply to or cover transactions between third parties or parties who were strangers to the transaction." *Copeland v. Hunt*, 434 S.W.2d 156, 158 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e); *see also Boysen v. Sec. Lumber Co.*, 531 S.W.2d 454, 456 (Tex. Civ. App.—Houston [14th Dist.] 1975, no writ) ("It is well established that the rule which makes a verified account prima facie

12

evidence in the absence of a written denial under oath does not apply to transactions between third parties or parties who were strangers to the transaction."); *Evans Advert. Agency, Inc. v. Morphew*, 525 S.W.2d 56, 58 (Tex. Civ. App.—Tyler 1975, no writ) (stating that suit on a sworn account "presupposes a contract performed by one party who sues the other party for performance of his obligations, but it does not apply to or cover transactions between parties who were strangers to the transaction").

BigCommerce does not allege a plausible suit on sworn account claim because its own pleadings show that Omni was a "stranger to the transaction" and not a party to the Agreement. *See Boysen*, 531 S.W.2d at 456 (stating that strangers to the transaction exception applies "where the plaintiff's own pleadings—or the invoices or other evidence exhibited as the basis of the obligation—reflected that the defendant was not a party to the original transaction"); *Copeland*, 434 S.W.2d at 158-59 (finding that plaintiff failed to show that individual defendant owed on the account where "[t]he plaintiffs' account was directed to defendant corporation. Nowhere does the attached account name the [individual] defendant"). In addition, because BigCommerce alleges that Omni was not created until June 2023, it cannot plausibly allege that it provided services to Omni in January 2022 or that Omni failed to pay for those services. *See Cinco J., Inc. v. Pressure Trucks, Inc.*, No. SA-15-CV-214-XR, 2015 WL 1957108, at *7 (W.D. Tex. Apr. 29, 2015) (dismissing suit on sworn account against third-party guarantor when plaintiff failed to allege facts showing that it sold good and services to third-party defendant); *Evans*, 525 S.W.2d at 59 ("The plaintiff's failure to prove performance of personal services [to defendant] foreclosed any possible recovery in this suit."). For these reasons, BigCommerce fails to allege a plausible suit on sworn account claim against Omni.

## C. Quantum Meruit

In the alternative, BigCommerce contends that it is entitled to recover damages against Omni in quantum meruit. Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *MetroplexCore, LLC v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014). This remedy "'is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Id.* (quoting *Vortt Expl. Co. v. Chevron USA, Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). A party may recover in quantum meruit when nonpayment for the services rendered would "result in an unjust enrichment to the party benefited by the work." *Vortt*, 787 S.W.2d at 944 (citation omitted).

To recover in quantum meruit, a plaintiff must show: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Id.*

In support of its quantum meruit claim, BigCommerce alleges in its Complaint: (1) it "rendered valuable services to Defendants through integrating Defendants' software onto Plaintiff's ecommerce platform, and this was done to Defendants' benefit, and to provide Defendants with additional revenue"; (2) "Plaintiff's integration of Defendants' software onto Plaintiff's ecommerce platform resulted in significant additional revenues to Defendants"; (3) "Defendants accepted Plaintiff's provision of services through their acceptance of Plaintiff's merchants seeking to use Defendants' software on Plaintiff's ecommerce platform and Defendants' acceptance of revenue from those merchants"; (4) "Defendants had reasonable notice that Plaintiff expected

14

compensation for its services, as Plaintiff communicated an intent to receive a percentage share of revenues received by Defendants as a result of Plaintiff's services"; and (5) "At the outset of the Parties' relationship, Defendants compensated Plaintiff with a percentage of Defendants' revenues—showing that Defendants had notice that Plaintiff expected to be paid—but, in or around January of 2022, Defendants stopped making payments." Dkt. 1 ¶¶ 72-76.

Because Omni did not exist until June 2023, BigCommerce cannot plausibly allege that it provided services to Omni in January 2022 by integrating Omni's software onto its ecommerce platform, that Omni had reasonable notice that BigCommerce expected compensation for its services, or that Omni accepted those services.

"To recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988). Because BigCommerce does not show that its services were provided to Omni and that Omni agreed to be charged for those services, it does not allege a plausible quantum meruit claim against Omni.

## IV.     Request to Amend

In its Response, BigCommerce requests leave to file an amended complaint if the Court finds its pleadings deficient. Dkt. 25 at 20. BigCommerce neither attached a proposed amended complaint to its Response, as required by Local Rule CV-7(b) of the Local Court Rules of the United States District Court for the Western District of Texas, nor explains how amendment would cure any deficiencies in its pleadings.

Courts should "freely" grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). But "a district court need not grant a futile motion to amend." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). "Futility is determined under Rule 12(b)(6) standards, meaning an

amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.* (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000)).

Because BigCommerce offers no facts to cure the defects in its allegations, the Court denies its request to amend. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (affirming district court's denial of leave to amend where plaintiff failed to apprise the district court of the facts he would plead in an amended complaint, if necessary, to cure any deficiencies). The Court also finds that any amendment would be futile because Omni was not created until June 2023 and so could not be liable for the conduct alleged by BigCommerce. BigCommerce's request for leave to amend is **DENIED**.

## V.  Order

The Court **GRANTS** Defendant Omni One AI LLC's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 20) and **DISMISSES** Omni One AI LLC.

**SIGNED** on November 24, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE